FILED
2016 Apr-01  AM 08:26
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**(MIDDLE DIVISION)**

**AMANDA ELLIS,**

     **PLAINTIFF,**

                                          **Case No.:**

**V.**

**TRANS UNION, LLC,**
**EQUIFAX INFORMATION SERVICES, LLC,**      <u>**JURY DEMANDED**</u>
**EXPERIAN INFORMATION SOLUTIONS, INC.,**
**AND LANDSAFE CREDIT INC.,**

     **DEFENDANTS.**

## COMPLAINT

COMES NOW the plaintiff, Amanda Ellis, by and through her undersigned counsel, and with knowledge as to her own acts, upon information and belief and investigation of counsel as to the acts of others, believing such allegations have evidentiary support after a reasonable opportunity for further investigation or discovery alleges as follows:

### PRELIMINARY STATEMENT

1.      This is an action for an actual, statutory and punitive damages, costs and attorneys' fees pursuant to 15 U.S.C. §1681, *et seq.* (Fair Credit Reporting Act or FCRA).  "Credit is the lifeblood of the modern American economy, and for the American consumer access to credit has become inextricably tied to consumer credit scores as reported by credit reporting

agencies." *Burke v. Experian,* Case No.: 1:10-cv-1064-AJT-TRJ (E.D. Va. March 18, 2011). Congress made the following findings when it enacted the FCRA:

> **(1)** The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

> **(2)** An elaborate mechanism has been developed for investigating and evaluating the credit worthiness, credit standing, credit capacity, character, and general reputation of consumers.

> **(3)** Consumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers.

> **(4)** There is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy.

15 U.S.C. § 1681(a)(1-4). Thus, one of the fundamental purposes of the FCRA is "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information in accordance with the requirements of this subchapter." 15 U.S.C. § 1681(b). Accordingly, "[t]he

FCRA evinces Congress' intent that consumer reporting agencies, having the opportunity to reap profits through the collection and dissemination of credit information, bear 'grave responsibilities.'"  *Cushman v. Trans Union*, 115 F.3d 220, 225 (3d Cir. 1997).

2.     "Mixed files" create a false description of a consumer's credit history.

3.     A "mixed file" occurs when information that relates to Consumer B appears in Consumer A's credit file.  More specifically, a mixed file "refers to a Consumer Report in which some or all of the information pertains to Persons other than the Person who is the subject of that Consumer Report." *F.T.C. v. TRW, Inc.* 784 F.Supp. 361, 362 (N.D. Tex. 1991)[1].

4.     More recently, the New York Attorney General defined a mixed file as credit file information that is mixed with that of another consumer.[2] *See also*     http://www.ohioattorneygeneral.gov/Files/Briefing-Room/News-Releases/Consumer-Protection/2015-05-20-CRAs-AVC.aspx.

5.     Mixed files are not a new phenomenon.  The consumer reporting agencies have been on notice of the existence of mixed files for over thirty

---

[1] Experian Information Solutions, Inc. is formerly known as TRW, Inc.

[2] *See* http://www.ag.ny.gov/press-release/ag-schneiderman-announces-groundbreaking-consumer-protection-settlement-three-national Last visited March 31, 2016.

(30) years.  *See Thompson v. San Antonio Retail Merchants Ass'n*, 682 F.2d 509, 511 (5th Cir. 1982).

6.     Mixed files occur despite consumers' unique personal identifying information, such as Social Security numbers or date of birth, or both.

7.     Further, mixed files result in the disclosure of a consumers' most personal identifying and financial information absent the consumer's knowledge or consent, or both.

8.     Mixed files also result in the debt collection harassment of innocent consumers because debt collectors use CRA databases to "skip trace" debtors and locate the alleged debtor's address and telephone number.

9.     In the 1990's the Federal Trade Commission ("FTC") filed a lawsuit against Equifax, Trans Union and Experian's predecessor TRW because of their failure to comply with the FCRA including the mixing of consumers' files.

10.    In the 1990's the Attorneys General of a number of states filed a lawsuit against Equifax, Trans Union and Experian's predecessor TRW because of their failure to comply with the FCRA, including the mixing of consumers' files.

11.    In 1991, TRW signed a Consent Order with the FTC.  To prevent the occurrence or reoccurrence of a mixed file, TRW agreed to use, for matching and identification purposes, a consumer's full identifying information, defined as full first and last name, full street address, zip code, year of birth, any generational designation and social security number.

12.    In 1992, Trans Union signed a Consent Order with the Attorneys General of 17 states.  Trans Union agreed that it would maintain reasonable procedures to prevent the occurrence or reoccurrence of mixed files.  For example, procedures during the reinvestigation process include, assigning mixed file cases to Senior Investigators who, as appropriate, must pull all files related to the consumer, fully verify disputed information, make any changes, deletions or additions to correct the file and resolve the dispute, and prepare a summary of the problem to be filed with another department for corrective action.

13.    In 1992, Equifax signed an Agreement of Assurances with the Attorneys General of 18 states.  Equifax agreed it would maintain reasonable procedures to prevent mixed files by accepting and using a consumer's full identifying information (full first and last name, middle initial, full street address, zip code, year of birth, any generational designation, and social security number) for matching and identification purposes.

14.     In 1994, Equifax signed a Consent Order with the FTC.  Equifax agreed it would follow reasonable procedures to assure the maximum possible accuracy of the information on a consumer's file including, but not limited to, procedures to detect logical errors prior to reporting information on a consumer's file, procedures to prevent mixing as a result of data entry by third parties when the third party requests a consumer's report, and procedures during a reinvestigation specifically designed to resolve consumer disputes related to a mixed file.

15.     The consumer reporting agency defendants in this case are aware of Federal Trade Commission and state attorney general enforcement actions[3] concerning or related to mixed files.

16.     In 2002, the jury in *Judy Thomas v. Trans Union LLC,* District of Oregon, Case No. 00-1150-JE, found Trans Union had willfully violated the FCRA by mixing Judy Thomas with another consumer and failing to unmix them despite Ms. Thomas' disputes.  The jury awarded Ms. Thomas $5 million in punitive damages and $300,000 in actual damages.  Despite the

---

[3] Including the most recent Alabama state attorney general enforcement action settled May 20, 2015.  See http://www.ohioattorneygeneral.gov/Files/Briefing-Room/News-Releases/Consumer-Protection/2015-05-20-CRAs-AVC.aspx Last visited March 31, 2016.

verdict, Trans Union continues to mix consumers' files with other consumers' files.

17.     In 2007, the jury in *Angela Williams v. Equifax Information Services, LLC,* Circuit Court for Orange County Florida, Case No. 48-2003-CA-9035-0, awarded Angela Williams $2.7 million in punitive damages and $219,000 in actual damages for willfully violating the FCRA by mixing Angela Williams with another consumer and failing to unmix them despite Ms. Williams' disputes.  Despite the verdict, Equifax continues to mix consumers' files with other consumers' files.

18.     In 2013, the jury in *Julie Miller v. Equifax Information Services, LLC,* D. Oregon, Case No. 3:11-cv-01231-BR, awarded Julie Miller $18.4 million in punitive damages and $180,000 in actual damages for willfully violating the FCRA by mixing Julie Miller with another consumer and failing to unmix them despite Ms. Millers' disputes.  Despite the verdict, Equifax continues to mix consumers' files with other consumers' files.

19.     Over the last ten years, Experian has been sued hundreds of times by consumers whose files were mixed with a different consumer by Experian.

20.     In *Calderon v. Experian*, the court compelled Experian to produce a list of prior lawsuits on mixed files and against it for the five (5) years preceding Plaintiff's complaint. Also, the court compelled the court to

7

produce discovery on the number of mixed file disputes it handled in the preceding five (5) years. *Calderon v. Experian*, Case 1:11-cv-00386-EJL-MHW, pp. 7-8 (D. Idaho Jun. 18, 2012).

21.    Indeed, Equifax, Experian and Trans Union have had notice of mixing Plaintiff's credit file.  Plaintiff previously sued Equifax, Experian and Trans Union in 2012 because the consumer reporting agencies violated the FCRA when it mixed her credit file.  *See Ellis v. Experian, et al,* Case 4:12-cv-02779-RBP.

22.    Despite federal law, Congressional mandates, federal and state government enforcement actions, hundreds of other consumer lawsuits (including Ms. Ellis' previous lawsuit), mixed files remain a significant problem for consumers, including Plaintiff.

23.    The sale of consumers' most private and sensitive personal and financial information is a multi-billion-dollar industry for the CRAs.

24.    Experian's parent corporation, Experian plc, reported $4.81 billion in revenue for the year ending March 31, 2015[4].

---

[4]http://annualreport.experianplc.com/2015/_resources/pdf/Experian%20Annual%20Report%202015.pdf  Last visited March 31, 2016.

25.     Equifax reported more than $2.6 billion in operating revenue in its annual report for year ending in 2015[5].

26.     In its latest 10-K provided to the U.S. Securities and Exchange Commission, Trans Union reported over $1.5 billion in revenue for year ending in 2015[6].

27.     Landsafe is aware of the above-described government enforcement actions.

28.     Landsafe is aware of the Williams verdict.

29.     Landsafe is aware of the Thomas verdict.

30.     Landsafe is aware of the Miller verdict.

31.     Landsafe is aware of the existence of mixed files, as defined above.

## JURISDICTION & VENUE

32.     This Court has jurisdiction pursuant to 15 U.S.C. §1681p.

33.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b).

## PARTIES

---

[5] http://files.shareholder.com/downloads/ABEA-32806R/1801692852x0x882810/CC30F45C-8BF7-4814-8A29-A7CE1D85EDCA/15-1002_2015_Annual_Report_Interactive_PDF_FINAL_032116.pdf Last visited March 31, 2016.

[6] http://s21.q4cdn.com/588148537/files/doc_financials/2015/YE/TRU-2015-Annual-Report-FINAL.PDF Last visited march 31, 2016.

30.     Plaintiff Amanda Ellis ("Plaintiff") is an adult individual resident of this judicial district. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1681a(c).

31.     Defendant Equifax Information Services, LLC ("Equifax") is a Georgia corporation with its principal place of business in Georgia.  Equifax does business in this judicial district.   Equifax is a nationwide consumer reporting agency ("CRA") as defined by 15 U.S.C. § 1681a(f).   Equifax regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports" as defined by 15 U.S.C. § 1681a(f) to third parties.  Equifax disburses such consumer reports to third parties of contract for monetary compensation.

32.     Defendant Experian Information Solutions, Inc. ("Experian") is an Ohio corporation with its principal place of business in California. Experian does business in this judicial district. Experian is a nationwide consumer reporting agency ("CRA") as defined by 15 U.S.C. § 1681a(f). Experian regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports" as defined by 15 U.S.C. §1681a(f) to third parties. Experian disburses such consumer reports to third parties of contract for monetary compensation.

33.     Defendant TransUnion LLC ("Trans Union") is a Delaware corporation with its principal place of business in Illinois.  Trans Union does business in this judicial district. Trans Union is a nationwide consumer reporting agency ("CRA") as defined by 15 U.S.C. § 1681a(f).  Trans Union regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports" as defined by 15 U.S.C. § 1681a(f) to third parties.  Trans Union disburses such consumer reports to third parties of contract for monetary compensation.

34.     Defendant Landsafe Credit Inc. ("Landsafe") is a foreign corporation with its principal place of business in Texas.  Landsafe is a business entity that regularly conducts business in this judicial district. Landsafe is a consumer reporting agency ("CRA") as defined by 15 U.S.C. 1681a(f) and a reseller of credit information.

35.     Landsafe regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports as defined by 15 U.S.C. §1681a(f) to third parties.  Further, Landsafe disburses consumer reports to third parties of contract for monetary compensation.

36.    Landsafe, in its capacity as a consumer reporting agency and reseller of consumer information, obtains consumer credit information from nationwide consumer reporting agencies.  The consumer credit information maintained for individual consumers by the nationwide consumer reporting agencies includes public record information, collection accounts, trade accounts, personal identifying information and inquiries.  Once Landsafe receives the requested consumer credit information, it assembles and merges the information into a Landsafe credit report.  Landsafe sells the credit report to third parties, such as Bank of America.  In the credit reporting industry, this is known as a "3 in 1"  or "tri-merge" credit report.

37.    Landsafe sells consumer reports concerning individuals who apply for credit, including mortgages.

38.    Equifax, Experian, Trans Union and Landsafe are referred to collectively as the "Defendants" throughout the complaint.

## FACTUAL ALLEGATIONS

39.    Defendants are regulated as a "consumer reporting agency" ("CRA") under the FCRA 15 U.S.C. § 1681a(f).

40.    Landsafe is a CRA and a reseller of credit information pursuant to 15 U.S.C. § 1681a(u).

41.    Defendants sell millions of consumer reports (commonly referred

to as "credit reports" or "reports") per day and also sell credit scores.

42.   Pursuant to the FCRA, Defendants must follow reasonable procedures which assure that the reports they sell meet the standard of "maximum possible accuracy."   15 U.S.C. § 1681e(b).

43.   The defendants sold credit reports with inaccurate information concerning Plaintiff.  The inaccurate information includes, but is not limited to, personal identifying information, collection accounts, credit accounts and inquiries. The information is false because the information relates to another consumer – not Plaintiff.  The inaccurate information harms Plaintiff's credit reputation because it does not accurately depict her credit history and credit worthiness.

44.   Equifax prepared and issued credit reports concerning Plaintiff that include inaccurate information.  Upon information and belief, Equifax reinserted inaccurate information previously deleted from Plaintiff's Equifax file. On more than one occasion, Plaintiff requested her consumer disclosure from Equifax.  On more than one occasion, Equifax failed to provide Plaintiff with her credit report. Equifax had an identity theft report in Plaintiff's file.

45.   Experian prepared and issued credit reports concerning Plaintiff that include inaccurate information.   Plaintiff notified Experian that she disputed the accuracy of the information.   Experian continued to report

inaccurate information.  Plaintiff requested Experian to provide her with her credit report.  On at least one occasion Experian failed to provide Plaintiff with her report. Experian provided third parties plaintiff's credit report when a request was made for another person's consumer report. Experian had an identity theft report in Plaintiff's file.

46.    Trans Union prepared and issued credit reports concerning Plaintiff that include inaccurate information.  Trans Union reinserted inaccurate information previously deleted from Plaintiff's Trans Union file. Plaintiff notified Trans Union that she disputed the accuracy of the information. Trans Union continued to report the inaccurate information. Plaintiff requested Trans Union to provide him with his credit report.  Trans Union failed to provide Plaintiff with his report. Trans Union provided third parties plaintiff's credit report when a request was made for another person's consumer report.  Trans Union had an identity theft report in Plaintiff's file.

47.    In or around April 2014, Landsafe sold a credit report to Bank of America in connection with Plaintiff's application for credit.

48.    The Landsafe credit report included the inaccurate information described above.

49.    Before Landsafe sold the credit report to Bank of America, Landsafe did not reconcile any inconsistencies in the report.

50.   Landsafe did nothing to assure the maximum possible accuracy of the credit report it supplied to persons.

51.   As a result of Defendants' failure to comply with the requirements of the FCRA, Plaintiff suffered and continues to suffer actual damages, including credit denials, economic loss, lost opportunity to receive credit, damage to reputation, damage to creditworthiness, reduction in credit score, invasion of privacy, out of pocket expenses, emotional distress and interference with Plaintiff's normal and usual activities for which Plaintiff seeks damages in an amount to be determined by the jury.

## COUNT ONE – VIOLATION OF THE FAIR CREDIT REPORTING ACT
### (against Equifax)
### (Negligent Noncompliance with FCRA)

52.   Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

53.   Equifax negligently failed to comply with the requirements of the FCRA.

54.   As a result of Equifax's failure to comply with the requirements of the FCRA, Plaintiff suffered and continues to suffer actual damages, including economic loss, lost opportunity to receive credit, damage to reputation, damage to creditworthiness, reduction in credit score, invasion of

privacy, out of pocket expenses, emotional distress and interference with Plaintiff's normal and usual activities for which Plaintiff seeks damages in an amount to be determined by the jury.

55.   Plaintiff requests fees pursuant to 15 U.S.C. §1681o(a).

## COUNT TWO – VIOLATION OF THE FAIR CREDIT REPORTING ACT
### (Against Equifax)
### (Willful Noncompliance with FCRA)

56.   Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

57.   Equifax willfully failed to comply with the requirements of the FCRA.

58.   As a result of Equifax's failure to comply with the requirements of the FCRA, Plaintiff suffered and continues to suffer actual damages, including economic loss, lost opportunity to receive credit, damage to reputation, damage to creditworthiness, reduction in credit score, invasion of privacy, out of pocket expenses, emotional distress and interference with Plaintiff's normal and usual activities for which Plaintiff seeks damages in an amount to be determined by the jury.

59.   Plaintiff requests attorney fees pursuant to 15 U.S.C. §1681n(a).

## COUNT THREE – VIOLATION OF THE FAIR CREDIT REPORTING ACT

**(Against Experian)**
**(Negligent Noncompliance with the FCRA)**

60.   Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

61.   Experian negligently failed to comply with the requirements of the FCRA.

62.   As a result of Experian's failure to comply with the requirements of the FCRA, Plaintiff suffered and continues to suffer actual damages, including economic loss, lost opportunity to receive credit, damage to reputation, damage to creditworthiness, reduction in credit score, invasion of privacy, out of pocket expenses, emotional distress and interference with Plaintiff's normal and usual activities for which Plaintiff seeks damages in an amount to be determined by the jury.

63.   Plaintiff requests fees pursuant to 15 U.S.C. §1681o(a).

**COUNT FOUR – VIOLATION OF THE FAIR CREDIT REPORTING ACT**
**(Against Experian)**
**(Willful Noncompliance with the FCRA)**

64.   Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

65.   Experian willfully failed to comply with the requirements of the FCRA.

66.    As a result of Experian's failure to comply with the requirements of the FCRA, Plaintiff suffered and continues to suffer actual damages, including economic loss, lost opportunity to receive credit, damage to reputation, damage to creditworthiness, reduction in credit score, invasion of privacy, out of pocket expenses, emotional distress and interference with Plaintiff's normal and usual activities for which Plaintiff seeks damages in an amount to be determined by the jury.

67.    Plaintiff requests attorney fees pursuant to 15 U.S.C. §1681n(a).

## COUNT FIVE – VIOLATION OF THE FAIR CREDIT REPORTING ACT
### (Against Trans Union)
### (Negligent Noncompliance with the FCRA)

68.    Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

69.    Trans Union negligently failed to comply with the requirements of the FCRA.

70.    As a result of Trans Union's failure to comply with the requirements of the FCRA, Plaintiff suffered and continues to suffer actual damages, including economic loss, lost opportunity to receive credit, damage to reputation, damage to creditworthiness, reduction in credit score, invasion of privacy, out of pocket expenses, emotional distress and interference with Plaintiff's normal and usual activities for which Plaintiff seeks damages in an

amount to be determined by the jury.

71.   Plaintiff requests fees pursuant to 15 U.S.C. §1681o(a).

## COUNT SIX – VIOLATION OF THE FAIR CREDIT REPORTING ACT
### (Against Trans Union)
### (Willful Noncompliance with the FCRA)

72.   Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

73.   Trans Union willfully failed to comply with the requirements of the FCRA.

74.   As a result of Trans Union's failure to comply with the requirements of the FCRA, Plaintiff suffered and continues to suffer actual damages, including economic loss, lost opportunity to receive credit, damage to reputation, damage to creditworthiness, reduction in credit score, invasion of privacy, out of pocket expenses, emotional distress and interference with Plaintiff's normal and usual activities for which Plaintiff seeks damages in an amount to be determined by the jury.

75.   Plaintiff requests attorney fees pursuant to 15 U.S.C. §1681n(a).

## COUNT SEVEN – VIOLATION OF THE FAIR CREDIT REPORTING ACT
### (Against Landsafe)
### (Negligent Noncompliance with the FCRA)

76.   Plaintiff adopts and incorporates the above-numbered paragraphs

as if fully stated herein.

77. Landsafe negligently failed to comply with the requirements of the FCRA.

78. As a result of Landsafe's failure to comply with Section 1681e(b)'s requirements of the FCRA, Plaintiff suffered and continues to suffer actual damages, including economic loss, lost opportunity to receive credit, damage to reputation, damage to creditworthiness, reduction in credit score, invasion of privacy, out of pocket expenses, emotional distress and interference with Plaintiff's normal and usual activities for which Plaintiff seeks damages in an amount to be determined by the jury.

79. Plaintiff requests fees pursuant to 15 U.S.C. §1681o(a).

**COUNT EIGHT – VIOLATION OF THE FAIR CREDIT REPORTING ACT**
**(Against Landsafe)**
**(Willful Noncompliance with the FCRA)**

80. Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

81. Landsafe willfully failed to comply with Section 1681e(b)'s requirements of the FCRA.

82. As a result of Landsafe's failure to comply with the requirements of the FCRA, Plaintiff suffered and continues to suffer actual damages, including economic loss, lost opportunity to receive credit, damage to

reputation, damage to creditworthiness, reduction in credit score, invasion of privacy, out of pocket expenses, emotional distress and interference with Plaintiff's normal and usual activities for which Plaintiff seeks damages in an amount to be determined by the jury.

83.    Plaintiff requests attorney fees pursuant to 15 U.S.C. §1681n(a).

84.    Plaintiff requests a jury trial on all claims.

## PRAYER

Wherefore, Plaintiff prays for judgment against Defendants as follows:

On the First Claim for Relief:

1. Actual damages to be determined by the jury; and

2. Attorneys' fees and costs.

On the Second Claim for Relief:

1. Actual damages to be determined by the jury;

2. Punitive damages to be determined by the jury;

3. Statutory damages to be determined by the jury; and

4. Attorneys' fees and costs.

On the Third Claim for Relief:

1. Actual damages to be determined by the jury; and

2. Attorneys' fees and costs.

On the Fourth Claim for Relief:

1.  Actual damages to be determined by the jury;

2.  Punitive damages to be determined by the jury;

3.  Statutory damages to be determined by the jury; and

4.  Attorneys' fees and costs.

On the Fifth Claim for Relief:

1.  Actual damages to be determined by the jury; and

2.  Attorneys' fees and costs.

On the Sixth Claim for Relief:

1.  Actual damages to be determined by the jury;

2.  Punitive damages to be determined by the jury;

3.  Statutory damages to be determined by the jury; and

4.  Attorneys' fees and costs.

On the Seventh Claim for Relief:

1.  Actual damages to be determined by the jury; and

2.  Attorneys' fees and costs.

On the Eighth Sixth Claim for Relief:

1.  Actual damages to be determined by the jury;

2.  Punitive damages to be determined by the jury;

3.  Statutory damages to be determined by the jury; and

4.  Attorneys' fees and costs.

Dated: March 31, 2016

Respectfully submitted,

**/s/ Micah S. Adkins**
Micah S. Adkins (ASB-8639-I48A)
**THE ADKINS FIRM, P.C.**
The Kress Building
301 19th Street North, Suite 581
Birmingham, AL  35203
Telephone: (205) 458-1204
Facsimile:  (205) 208-9632
Email:
MicahAdkins@ItsYourCreditReport.com